IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JAMES CALHOUN-EL                          :          Civil Action No. RDB-07-220
#160083
          v.                              :

GARY D. MAYNARD, et al                    :

o0o

## MEMORANDUM OPINION

Before the Court is a *pro se* prisoner civil rights claim pursuant to 42 U.S.C. §1983 filed by

James Calhoun-El, an inmate at the Jessup Correctional Institution.  Plaintiff presents a litany of

complaints pertaining to mail and legal materials, medication and treatment, opportunities for religious

observance, resolution of grievances filed through the prison Administrative Remedy Process (ARP),

and conditions of his confinement.[1]  Plaintiff seeks damages and injunctive relief.

Counsel for the State Defendants[2] and Motti Muletta, MD, [3] have separately filed dispositive

motions to dismiss the complaint or, in the alternative, for summary judgment. Defendants rely on

materials beyond the scope of the Complaint and their pleadings shall be construed as motions for

---

[1]Plaintiff also contends that his sentence has been improperly calculated. Complaint, ¶ 28. This claim must be raised by way of a 28 U.S.C. §2254 petition for writ of habeas corpus. The Clerk will mail a forms and information packet for filing a habeas petition to Petitioner in the event he intends to pursue this claim.

[2] Plaintiff originally named Mary Ann Saar, Secretary, Department of Public Safety and Correctional Service as a defendant.  Presently, Gary D. Maynard holds that position and the docket has been amended accordingly.  Secretary Maynard, Commissioner John Rowley, former Warden James Smith, former Chief of Security Whitaker, Captain Simpson, Lieutenant J. Williams, Lieutenant M. Williams, Lieutenant S. Watkins, Lieutenant Brown, Sergeant Coleman, Sergeant Mason, Sergeant R. Walker, Officer Coleman, Officer E. Brown, and Officer Lasane are collectively referred to as "State Defendants."

[3] Dr. Muletta is an employee of Correctional Medical Services, Inc. (CMS), a private contractor providing medical services to certain correctional facilities in Maryland.  Service could not be obtained on Craig Harbour, a former employee of CMS, who was also named as a Defendant.

summary judgment pursuant to Fed. R. Civ. P. 56.  A hearing is unnecessary.  *See* Local Rule 105.6 (D. Md. 2004).  After review of the pleadings, exhibits, and applicable law, the Court will grant Defendants' Motions for Summary Judgment[4] and enter judgment in favor of the State Defendants and Dr. Muletta.[5]

## BACKGROUND

Plaintiff has a history of non-insulin dependent diabetes mellitus, hypertension, lumbar spine degenerative joint disease and Hepatitis C (HCV)**.**  Verified exhibits submitted by counsel show that Dr. Mulletta examined Plaintiff in the Chronic Care Clinic on July 1, 2005, counseling him and providing educational materials about HCV.  Plaintiff refused to sign a form acknowledging receipt of  HCV information.  Dr. Muletta also informed Plaintiff that he did not meet the Department of Public Safety and Correctional Services (DPSCS) critieria for treatment for HCV.  The DPSCS criteria provide that treatment for HCV is indicated when an inmate's alanine aminotransferase levels ("ALT")[6] remain elevated over a period of six months.  Additionally, the inmate must not demonstrate any symptoms that disqualify him from treatment, including compliance issues with a chronic care condition, alcohol or illicit drug use, or AIDS. Muletta Decl.,  Ex. A, ¶ 5.

Plaintiff does not qualify for HCV treatment under DPSCS criteria for two reasons: Plaintiff's serum ALT level has remained at normal and has not become elevated since July 1, 2005, and his

---

[4]  Plaintiff was provided an opportunity to oppose these motions (Paper No. 39), but chose not to respond.

[5]  Service was not obtained on former Caption Guy, (now retired), Lieutenant Stepler or Captain D. Washington.  Captain Stafer, Officer Oaboeiu, and Officer Ebaha, also named as Defendants, could not be identified and were not served.  Plaintiff's claims would remain unavailing had service been obtained on these Defendants.

[6] ALT is an enzyme released into the bloodstream as a result of liver damage.  ALT levels are used to gauge inflammation and damage to the liver at any one time.  Muletta Decl., Ex. A, p. 6,  n 3.

diabetes is poorly controlled.[7]   According to Dr. Muletta, Plaintiff's HgA1C test, an indicator of how well blood sugar level is managed in diabetics, ranges from 9.3% to 12.8%.  As of June 11, 2007, Plaintiff's HgA1C level remained "very high" at 9.9%. Muletta, Decl., Ex. A, ¶ 6.[8]  Dr. Muletta and the medical staff continue to monitor Plaintiff's HgA1C and ALT levels . If and when Plaintiff's condition meets DPSCS criteria for HCV treatment, he will be reevaluated to determine his eligibility for treatment.  Muletta Decl., Ex. A, ¶ 7.

Plaintiff's  medical records indicate that he receives NPH insulin or UltraLente insulin (long-acting insulin) each day, and regular insulin (shorter-acting insulin) when his blood sugar is higher than 201 milligrams per deciliter. The insulin was added to Plaintiff's medication regimen to better control the diabetes. Muletta, Ex. A, ¶ 8.  On October 12, 2006, and November 10, 2006,  Plaintiff was given thirty-day supplies of metformin, an oral medication also known as Glucophage, used to treat non-insulin dependent diabetes mellitus.  This medication was provided as "KOP" or "keep on person," so that Plaintiff could take this medication on his own. Muletta Decl., Ex. A, ¶ 8. There are no sick call slips on file to show that Plaintiff complained to Dr. Muletta or any other health provider that he was not receiving his insulin between October 23, 2006, through November 5, 2006. *See id.*

Dr. Muletta attests that glucose monitors are used to test a diabetic inmate's blood sugar to determine the amount of insulin needed.  He explains:

> A nurse uses a small lancet to puncture the skin and produce a small bead of blood. The blood is then applied to a reagent strip.  This strip is put into the glucose machine, which gives a numerical readout of the inmate's blood sugar level.  A sterile lancet and a clean reagent strip are used each time this test is performed, even if the test has to be repeated for the same patient.  No blood is

---

[7] Serum ALT is a prime indicator of damage to liver cells and is used to determine when treatment for HCV is indicated. Diabetes is a chronic care condition. Muletta, Ex. A, p.3 ¶ 5 & n. 2 .

[8] A measurement below 7% indicates the patient's diabetes is well-controlled. Muletta, Ex. A, p. 3, n. 3.

> ever transferred from the lancet, reagent strip, or machine to the patient being
> tested.

Muletta Decl., Ex. A, ¶ 9.

Verified records filed by State Defendants show that on April 4, 2006, Plaintiff was placed on administrative segregation after he was charged with refusing to obey a direct order and for possession of contraband.  State Def. Ex. 8.  Plaintiff refused to remove a white cloth from his head after two direct orders.  State Def. Ex. 8.  Following an adjustment hearing on April 11, 2006, the charges were reduced to an incident report and Plaintiff was returned to the general population. Def. Ex. 10.  On October 23, 2006, Plaintiff was placed on administrative segregation after he was charged with rule violations for refusing to obey an order to "lock-in" to his cell.  State Def. Ex. 8 .

Plaintiff was assigned to administrative segregation on November 4, 2006, after the Chief of Security received an anonymous note stating that Plaintiff was threatening other inmates  Def. Ex. 10.  After case management team review on November 8, 2006, Plaintiff was returned to the general prison population.   Def. Ex. 10.

## SUMMARY JUDGMENT

Summary judgment is granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  This does not mean that any factual dispute will defeat the motion.  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).  The Court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *See Celotex*, 466 U.S. at 322.

## ANALYSIS

### Claims Against Dr. Muletta

Plaintiff alleges that he has been denied constitutionally adequate care for a serious medical need in violation of the Eighth Amendment.  Plaintiff claims: 1) Dr. Mulletta refuses to treat him for Hepatitis C; 2) he went without his insulin for fourteen days, from October 23, 2006, to November 5, 2006; and 3) the glucose monitor used to test his blood sugar levels is not cleaned after use and is unsanitary.

A constitutional claim under the Eighth Amendment for denial of medical care must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to Plaintiff's serious medical needs.  *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  The treatment rendered must be so grossly incompetent or inadequate as to shock the conscience

or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

Under this standard, Plaintiff fails to show that Dr. Muletta acted with deliberate indifference to his medical needs. Plaintiff's medical history and DPSCS criteria currently make him ineligible for HCV treatment. Plaintiff is monitored. If his medical condition changes, Plaintiff will be re-assessed for treatment. In the meantime, Dr. Muletta and prison medical providers are treating Plaintiff for diabetes with insulin (long-acting and short acting) and medications that he "keeps on person." Dr. Muletta has attested to the sterile procedures used to test diabetic inmates' blood sugar. Plaintiff provides no basis for the Court to find that Dr. Muletta was aware that Plaintiff was unable to walk to the medical unit for his insulin between October 23, 2006, through November 5, 2006. Plaintiff does not allege nor does the record suggest that Dr. Muletta acted with deliberate indifference to Plaintiff's serious medical needs.

In sum, the allegations raised by Plaintiff are insufficient to state a constitutional claim. Consequently, Dr. Muletta is entitled to summary judgment in his favor.

**Claims Against State Defendants**

**Statute of Limitations**

6

Plaintiff has submitted numerous ARP requests pertaining to claims raised in the Complaint, some of which span many years and may be time-barred.  Several are barred by the statute of limitations.  There is no specific federal statute of limitations governing §1983 actions, and such claims are considered personal injury claims for determining the applicable state statue of limitations.  *See  Wallace v. Kato,* 127 S. Ct.  1091, 1094 (2007); *Wilson v. Garcia*, 471 U.S.  261, 266-67 (1985).  In Maryland, the limitations period  is three years*.  See* Md. Code Ann., Cts. & Jud. Proc. §5-101.

Plaintiff presents three claims based on events which occurred more than three years before the Complaint was filed on January 22, 2007. Plaintiff's claims discussing ARPs filed prior to January 22, 2004, are time-barred, specifically, Plaintiff's claims related to ARP requests concerning unsanitary food trays, snack bags for diabetic inmates, and denial of sugar substitutes. Complaint, ¶¶ 46, 48-49, Plaint. Ex. U & V.   Additionally, Plaintiff filed an ARP on November 10, 2005, concerning a July 1, 2001, prison work stoppage for which he was sent to the Maryland Correctional Adjustment Center. Complaint,  ¶ 55.  The ARP was dismissed because it concerned a case management decision. State Def. Ex. 11.  This allegation also is time barred.  Plaintiff's remaining ARP requests will be reviewed as they  relate to claims raised in the Complaint.

### Access to Courts

Plaintiff claims: 1) an  issue of *Prison Legal News* was destroyed by prison mail room staff; 2) legal mail sent to him from Donald P. Salzman, Esq. was returned to sender; and 3) he received a notice from a clerk at the Maryland District Court for Anne Arundel County advising him that a CD (compact disc) he had requested had been sent  but returned after corrections officials refused to accept it.

Plaintiff 's ARP concerning his mail was investigated and dismissed.   There was

no evidence discovered that mail room staff were destroying mail. Plaint. Ex. B. The Warden found Plaintiff's ARP concerning correspondence from Donald P. Saltzman, Esq. to have merit in part, and mail staff were instructed to open all legal mail with the inmate addressee present.  Plaintiff's appeal of the Warden's response was dismissed because the Warden had addressed the ARP and Plaintiff failed to refute it. Plaint. Ex. C. Plaintiff's ARP concerning the returned CD was determined untimely.  Plaintiff's  appeal of the CD decision was found to have merit, but for unexplained reasons Plaintiff withdrew the ARP. State Def. Ex. 1, ARP dated October 29, 2005.

 Plaintiff also complains that the prison library is unable to obtain a copy of the contract between the State and CMS for medical services.  Plaintiff submitted an ARP stating that: "[o]n numerous occasions the Librarian has requested a copy of the Correction [sic] Medical Services Inc., Medical Contract." Plaint. Ex. D.  As relief, Plaintiff asked "[t]hat a copy of the Correction [sic] Medical Services Inc., Medical Contact [sic] be placed in the library." *Id.*  The ARP was administratively dismissed as final because an inmate may not file an ARP on behalf of others under DCD185-205.  *See id*.

To state a constitutional claim under the First Amendment for denial of access to the courts based on  interference with legal mail, an inmate must demonstrate some actual harm or prejudice to his ability to communicate with the court or with counsel.  *See Lewis v. Casey,* 518 U.S. 343 (1996); *see also White v. White,* 886 F.2d 721, 724) (holding that to state a claim based on delay or non-delivery of legal mail, an inmate must allege that he suffered actual adverse consequences as a result of the delay or that the non-delivery deprived him of meaningful access to the courts).  Even if the Court were to assume

Plaintiff's allegations true, he fails to specify actual harm.[9]   Plaintiff does not state

whether the actions about which he complains caused him to miss specific court dates or

deadlines, impeded his ability to pursue litigation, or interfered with his ability to

communicate with the court.  Plaintiff does not provide any factual predicate to suggest

that Defendants' actions thwarted his efforts to raise or participate in his defense.  Absent

allegation of specific, actual adverse consequences,  Plaintiff fails to state a claim for

denial of access to the courts.  Consequently, these claims are unavailing.

### Religious Observance

Plaintiff, who identifies himself as a member of the Moorish Science Temple,

complains that his First Amendments rights were violated on September 7, 2005, when he

was not provided a ceremonial food package for a holy day celebration. Additionally, he

claims that on April 3, 2006, corrections officers ordered him to remove a religious

headdress.  Plaintiff states that he was placed on segregation after refusing to remove the

headdress.

Plaintiff asserts that he filed ARPs after both incidents.  Plaint. Exs. F & G.  Counsel

for State Defendants indicates that there is no record of Plaintiff submitting an ARP about

a ceremonial food package, and notes that Plaintiff's ARP filed as Plaintiff's Exhibit F does

not bear a date stamp from the Warden's Office or Department of Correction Headquarters

to verify  proper filing.  State Def. Memorandum, p. 5;  State Def. Ex. 2, ¶ 2. Plaint. Ex. F.

The ARP for the  religious headdress and assignment to segregation status also

lacks the appropriate stamp. Plaint. Ex. E.  According to a letter dated December 21, 2006,

---

[9] Further, allegations that a state actor has negligently or intentionally destroyed, lost, or interfered with legal mail or other personal property do not state a procedural due process claim where effective state remedies are available.  *See Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)).

from then Acting Department of Correction Commissioner John Rowley, Plaintiff was placed on segregation and charged with failing to obey a direct order and possessing contraband. A hearing was conducted on April 11, 2006, and the charges were reduced to an incident report. State Def. Ex. 2, ¶ 2. Plaintiff was returned to the general population the following day. *See id.*

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered. Prison restrictions that impact on the free exercise of religion, but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89–91 (1987).

Under this standard, prison officials are accorded wide discretion and deference in adopting and executing policies and practices to maintain internal order and security. *See Bell v. Wolfish,* 441 U.S. 520 (1979); 174 F. 3d 464, 468 (4th Cir. 1999). In this case, Plaintiff failed to obey a direct order. There are no facts presented to substantiate a constitutional claim. Plaintiff was not stripped of his right to practice his religion. To the extent Plaintiff asserts harm for his brief assignment to segregation, this claim will be addressed later in this Memorandum Opinion. *See infra*, p. 16**.**

### Medical

Plaintiff claims that he was unable to receive insulin at the medical unit for fourteen

days while in segregation from October 23, 2006, to November 5, 2006.  Plaintiff states that he was unable to walk up or down stairs to the medical unit without his back brace or pain medication.  Complaint ¶¶ 35, 50, 52,  Plaint. Exs. H, Y & W.   Additionally, Plaintiff complains that a podiatrist's order dated September 9, 2005, for shoes, boots, and socks was ignored by property room staff.  Complaint, ¶36; Plaint. Ex. I.  Plaintiff also alleges that Lieutenant Simpson removed his name from the list of handicapped inmates.  Complaint, ¶ 37, Plaint. Ex. J.  Plaintiff also asserts that on December 28, 2005, Dr. Mulletta told him that he was not authorized to treat him for Hepatitis C.   Further, Plaintiff alleges that the glucose monitors at the prison are improperly disinfected and Sergeant Walker, the property room officer, refused to give him medical supplies and medications on April 4, 2006, while he was on disciplinary segregation.  Complaint, ¶¶ 38, 39 & 40; Plaint. Exs. K-M.

Plaintiff's ARP and appeal pertaining to his ability to walk to the medical unit for insulin were denied as untimely.  Def. Ex. 5.  Plaintiff's ARP concerning his footwear was dismissed as untimely, and his appeal of the dismissal was administratively dismissed as final.  Def. Ex. 3.  Plaintiff's ARP concerning the handicapped prisoner list was investigated and dismissed because there was no "handicapped  inmate  list."  *See id.*   The response noted that Plaintiff was housed on F-Building, C-Wing which has a wheelchair accessible shower.  *See id.*  Plaintiff's ARP concerning Hepatitis C treatment was dismissed after investigation showed that the medical department had added Plaintiff's name to the clinic list and he would be examined by Dr. Muletta.  The ARP concerning glucose monitors was determined without merit. The ARP against Sergeant Walker was dismissed as untimely.

Plaintiff also claims that he complained to then Chief of Security Whitaker on September 17, 2005, concerning the timing of his insulin doses.  The matter  was dismissed

after investigation. Complaint, ¶ 41,  Plaint. Ex. N.[10]  Plaintiff was advised that medical assignment sheets indicated that he was to return to the medical unit daily for insulin, dosage times were approximate and Plaintiff should eat his meals one-half hour prior to taking the insulin. *See id.* [11]

Plaintiff also raises claims concerning prison food. On November 18, 2006, Plaintiff filed an ARP,  complaining that he was served eggs too frequently and was denied his special medical diet.  Complaint, ¶ 44, Ex. Q.  The ARP was administratively dismissed as untimely.  Def. Ex. 4.

In another ARP, Plaintiff expressed dissatisfaction that he was unable to order sugar-free and salt-free items from a catalog.  Complaint, ¶ 47, Ex. T.   The ARP was dismissed and Plaintiff was advised that the commissary, a for-profit enterprise,  stock products for which the demand was highest including some sugar-free products. Plaintiff was further advised that the dietary department supplied him with a regimen meeting his medical needs. *See  id.*   Lastly, Plaintiff was reminded that inmates at the Jessup Correctional Institution were not permitted to receive packages of food.  *See id.*

The record shows that Plaintiff's complaints were investigated through the ARP process and relief provided when they were found to have merit.  Insofar as Petitioner intends to raise an Eighth Amendment claim for lack of proper medical care, a prisoner must establish the action or inaction of prison officials showed "deliberate indifference"

---

[10]  This ARP was filed prior to and is unrelated to Plaintiff's claim that he did not receive his insulin between October 23, 2006, and November 5, 2006.

[11]   Plaintiff also claims he was denied a special medical bed from October 24, 2006, through November 27, 2006, while he was on disciplinary segregation. Complaint, ¶ 43, Plaint. Ex. P.  It is unclear why the related ARP filed in support of the claim as Plaintiff's Exhibit P is dated October 21, 2002.  In any event, the ARP was deemed to have merit and a special bed was provided to Plaintiff.

to a "serious medical need."  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Viewed in the light most favorable to Plaintiff,  diabetes is an objectively serious medical condition requiring medical management.  Plaintiff, however, fails to allege facts sufficient to show that the State Defendants acted with requisite culpable intent.

Plaintiff's allegations do not set forth facts sufficiently establishing deliberate indifference to known medical needs.  Plaintiff  fails to show that correctional officials knowingly and intentionally knew of and disregarded a substantial risk of harm to him. *See Farmer v Brennan,* 511 U.S. 825, 837-38 (1994).  First, it is undisputed that while on segregation, Plaintiff was provided with medication "KOP"  to take on his own accord. Second, there is no evidence that Plaintiff submitted a timely ARP or otherwise acted to notify the medical department of his medical concerns while in segregation. Third, State Defendants are not medical professionals, and had no direct personal involvement in Plaintiff's medical care.  Finally, Plaintiff does not allege that he suffered any actual harm. Based on these facts, the Court finds ther  no genuine material issues of facts remain whether prison officials acted with requisite culpability to support an Eighth Amendment claim, and summary judgment in favor of the State Defendants is warranted as to these claims.[12]

**Conditions of Confinement**

Plaintiff claims that he has been denied adequate cleaning supplies. In addition, he complains that he was not provided hot meals and recreation while on administrative segregation between October 24, 2006, and October 27, 2006.

On August 31, 2005, Plaintiff filed an ARP regarding lack of cleaning supplies.

---

[12]   To the extent State Defendants are named under a theory of supervisory liability or *respondeat superior*, the doctrine of *respondeat superior* does not apply in 42 U.S.C. §1983 actions.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691-92 (1978).

Complaint, ¶ 42, Ex. O.   On September 16, 2005, Plaintiff withdrew the ARP.  Def. Ex. 6.   Plaintiff's ARP concerning hot meals and outside recreation was administratively dismissed pending resubmission.  Def. Ex. 7.  There is no record that Plaintiff resubmitted the ARP.

An Eighth Amendment claim is stated where an inmate is denied the minimum needs of civilized society due to deliberate indifference or wantonness.  *See Wilson v. Seiter*, 501 U.S. 294 (1991); *Hudson v. McMillan,* 503 U.S.1, 9 (1992).  Actual injury must have occurred as a result of the alleged deprivation for there to be a violation of constitutional magnitude. *See Strickler v. Waters*, 989 F. 2d 1375, 1381 (4th Cir. 1993). The types of deprivation described here fall far short of amounting to cruel and unusual punishment proscribed by the Eighth Amendment.   The deprivations alleged  posed neither imminent nor serious danger to Plaintiff's health or well-being. Rather, they were ordinary inconveniences associated with prison life.   Accordingly, State Defendants are entitled to summary judgment as to these claims.

**Retaliation, Harassment, False Reports and  Failure to Follow Policy**

Plaintiff alleges that on October 20, 2006,  he was threatened with segregation for refusing to withdraw an ARP.   Complaint, ¶ 50, Exhibit W.    Plaintiff contends an infraction he later received was based on a false report issued in retaliation against him. Complaint,  ¶ 51, Plaint. Ex. X.  Plaintiff's related ARP and appeal were dismissed.  The response noted that the infraction notice about which Plaintiff complained was written under oath by corrections officers. State Def. Ex. No. 8. Plaintiff also claims that he was threatened with transfer on October 19, 2005, when he refused to withdraw an ARP. Complaint, ¶ 53, Plaint. Ex. Z.  Although Plaintiff avers that he refused to withdraw the ARP, he in fact withdrew the ARP on November 10, 2005.  Def. Ex. 9.   Lastly, Plaintiff

14

filed an ARP that he was denied an informal disposition prior to placement on disciplinary segregation.  The ARP was administratively dismissed as untimely.  Complaint, ¶ 54. [13]

Plaintiff claims that on January 21, 2005, he was "pinned" between a door as it closed. Complaint,  ¶ 56, Plaint. Ex. CC.  The ARP was dismissed for lack of merit after investigation revealed Plaintiff was at fault.  *See id.*

Plaintiff also filed an ARP complaining about prison security counts. Complaint, ¶ 57, Plaint. Ex. DD.  Plaintiff's ARP requested that guards use flashlights during security counts to make the exercise less "intrusive."  *See id.*  The ARP was determined without merit. *See id.*  On appeal, the ARP was found  meritorious in part, and the Warden was directed to reinvestigate the grievance and amend his response. The amended response dismissed the ARP after medical and psychological staff reviewed  Plaintiff's files and determined special accommodations were unwarranted.

> Officers may sometimes need to call an inmate by name or knock on the cell door in order to observe the inmate's movement for the count.  This procedure was not created as a punishment against you as stated in your complaint.  In order to maintain the safety and security of the institution, the inmates and the public, officers must ensure that they are counting living breathing fleh as required by DCD 110-31.

*Id*.

None of these claims amounts to a violation of constitutional proportion.  Verbal abuse or threats by guards, no matter how unprofessional,  in the absence of injury fails to state an actionable claim under §1983.  *See Keenan v. Hall*, 83 F. 3d 1083, 1092 (9th Cir. 1996); *Carter v. Morris*, 164 F.3d 215, 219  n. 3 (4th Cir. 1999).  Insofar as Plaintiff intends to present a constitutional claim for retaliation for exercising a constitutional right, he must

---

[13]   As noted earlier, the infraction notice was reduced to an incident report and Plaintiff was returned to the general population. Def. Ex. 10.  Thus, even if it could be shown that there was procedural error, it was promptly cured after the adjustment hearing.

show that the alleged retaliation was "taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994). The facts alleged must be sufficient to support retaliatory motive. *White v. White*, 886 F. 2d 721, 724 (4th Cir. 1989). Claims of retaliation are generally viewed with skepticism by courts because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Adams*, 40 F.3d at 74. In this case, there is nothing to indicate that any action taken against Plaintiff was based on retaliation as opposed to legitimate reasons related to prison management.

Plaintiff's claims of alleged false reports are similarly without merit. Plaintiff provides no factual basis to support any allegation of deliberate filing of false reports against him and there is no constitutional right to be free from being falsely or wrongly accused of conduct that may result in deprivation of a protected liberty interest. *See Freeman v. Rideout*, 808 F. 2d 949 (2d Cir.1986). A bare claim of false charges does not state a claim under §1983. *See id.*

Further, Plaintiff's claims concerning his placement on administrative or disciplinary segregation do not *per se* implicate a constitutional liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995) (one-month confinement in disciplinary segregation did not amount to atypical and significant hardship in relation to the ordinary incidents of prison life and no liberty interest was implicated); *Beverati v. Smith*, 120 F. 3d 500 (4th Cir. 1997). The brief periods of segregation at issue here did not create an atypical or significant hardship on Plaintiff.[14] Consequently, these allegations are insufficient to

---

[14] Counsel for the State Defendants explains that inmates on segregation have the same mail and commissary privileges as inmates in the general population. The main difference between the two classification levels is that segregation inmates are handcuffed or shackled when outside of their housing area, permitted to leave their cells only one hour each day, and

support a claim of constitutional violation, and summary judgment in favor of State

Defendants is appropriate.[15]

CONCLUSION

When the facts are viewed in a light most favorable to Plaintiff, he has failed to

show Defendants' actions constituted an infringement of his constitutional rights; no

genuine issues of material fact remain.  Accordingly,  Defendants are entitled to summary

judgment as a matter of law.  A separate Order follows.


November 19, 2007                          /s/_____
Date                                                    RICHARD D. BENNETT
                                                        UNITED STATES DISTRICT JUDGE

---

provided two showers per week.  *See* State Def. Memorandum, p. 19.

[15]   In view of these findings, State Defendants' qualified immunity defense need not be
addressed.